Barrett, J.
This matter has come before the court on the amended complaint asserting a claim under G.L.c. 93A. The court makes the following findings.
FINDINGS
The parties entered into an agreed statement of facts originally set out as part of a joint pre-trial memorandum. This statement of facts was marked as Exhibit 3 and is attached hereto as Exhibit A.* The court adopts as findings the agreed facts set out in this exhibit. The court will not repeat in its findings each of the agreed facts set out in Exhibit A except to note that, in broad terms, the issue here involves a settlement of a workers’ compensation claim between the injured employee (Vegnani) and the employer’s carrier The Travelers Insurance Company (Travelers). The settlement agreement was scheduled for an approval conference before the Industrial Accident Board (IAB). Vegnani died of an unrelated illness before the approval hearing took place. Travelers thereafter withdrew “its settlememt offer.” Travelers thereafter refused to sign the IAB settlement application form and to support the settlement at the approval hearing.
After the parties appeared before Administrative Law Judge William A. McCarthy of the Industrial Accident Board on its approval conference. Judge McCarthy issued a memorandum indicating, inter alia, that the Board had no authority to determine whether a binding oral contract for a lump sum settlement had been entered into in this case and further, that there was no administrative remedy within the Department of Industrial Accidents for this matter.
At the outset of the hearing, before this court, the parties indicated that there was no issue regarding the employee’s consent to the settlement. The issue thus was clearly presented and limited to whether or not an insurance carrier could withdraw from an agreed settlement if the worker died between the date of the settlement and the date of the settlement conference before the Industrial Accident Board, and the consequent failure, because of the insurer’s withdrawal to get the approval of the Board to the settlement.
Robert Vegnani died of Hodgkins Disease, which was unrelated to the industrial accident for which he was then on workers’ compensation payments. Travelers was aware that Vegnani had this disease for some time.
On or about November 6, 1991, Attorney Horan, on behalf of Vegnani, telephoned Andrew Foley, Traveler’s claims representative on this matter and told him Veg-nani was deathly ill, undergoing chemotherapy, that he wanted to pay off certain debts that he had and was willing to settle the workers’ compensation claim for any amount. Attorney Horan described his evaluation of the case, considered apart from Vegnani’s illness, as a lump-sum settlement value of about $45,000. He offered to settle the claim for one third of this amount. Mr. Foley asked him to write a letter stating this settlement proposal and this letter was written offering to settle the matter for fifteen thousand dollars.
Sometime prior to November 20, 1991 Foley called Horan to inform him that the fifteen thousand dollars was acceptable to settle the matter and that Horan was to draft an agreement and to arrange a conference before the Industrial Accident Board to approve this settlement. This telephone conversation was confirmed by a letter to Horan from Foley dated November 20, 1991.
On November 20, 1991, a legal assistant for Attorney Horan wrote to Mr. Foley at Travelers advising that the offer of fifteen thousand dollars was accepted and, further, that a request had been made to the Industrial Accident Board for a lump sum settlement conference.
Vegnani died on December 10, 1991 and Attorney Horan’s office notified Travelers of his death. On December 17, 1991, Foley wrote to Attorney Horan that it had come to Traveler’s attention that Vegnani had died on December 10,1991 and, “in light of this, I must respectfully withdraw my previous settlement offer.”
*30 Attorney Horan protested, without success, this conduct on the part of Travelers.
On March 31, 1992, a G.L.c. 93A, §9 letter was written to Travelers on behalf of Vegnani’s estate. This letter was responded to on April 17, 1992 by Travelers denying any c. 93A liability.
The deposition of Mr. Foley and his superior Mr. Thomas Geneveux was subsequently taken. These depositions made it clear that Travelers was aware that Vegnani was very ill and that although they did not know how long he was going to live, this illness was one of the factors taken into account by Travelers in determining whether to agree to the lump sum settlement. It should be noted that there was no evidence to indicate that anyone knew or could know precisely how long Vegnani had to live. Both sides, however, were aware of the nature of his illness and that Vegnani’s own evaluation was that he was deathly ill and would not live much longer but there was nothing to medically establish this at trial.
Travelers, after the December 17, 1991 letter “withdrawing” the “settlement offer,” refused to sign the lump sum settlement form that the Industrial Accident Board procedures required and, after two continuances of the lump sum settlement conference, refused to go forward with the settlement.
The purpose of the lump sum settlement conference before the Industrial Accident Board, as disclosed by G.L.c. 152 §48, is to assure that the settlement is in the employee’s best interest. In view of the death of Vegnani, its hard to see how the Industrial Accident Board would not have approved the settlement as being in the best interest of the employee or his estate except for Travelers’ refusal to abide by its terms. There is nothing to prevent the IAB from considering and approving a lump-sum settlement after the death of the employee.
The sole reason stated by Travelers at the trial for its refusal to perform the settlement agreement was that the agreement had not been approved by the Industrial Accident Board before the employee’s death. The court notes, however, that the Board refused to consider the lump sum settlement because the employer had not consented (a matter no longer pressed byTravelers), and that Travelers had not signed the lump sum approval form. The court notes that the reason for the refusal of the Industrial Accident Board to consider the lump sum settlement was because of the refusal of Travelers to follow through with its sign off on the settlement papers. Thus Travelers withheld the means of performance of the settlement agreement.
By way of conclusion, the court finds that the parties on both sides were fully informed as to the state of health of Vegnani and that the lump sum settlement was not carried out because of the refusal of Travelers to live up to its obligation to sign the necessary lump sum settlement form before the Industrial Accident Board and to cooperate in obtaining of the approval by the Board.
DISCUSSION
There can be no doubt on the findings made heretofore that a settlement contract was entered into between the parties and the reason that it was not performed by both sides was namely the refusal of Travelers to cooperate in the hearing before the Industrial Accident Board and by its refusal to sign the settlement approval form. Travelers, by its attempt to withdraw from the settlement agreement, prevented the consideration of the matter by the Industrial Accident Board and, thus, prevented performance of the agreement. The issue is whether or not this conduct constituted a violation of G.L.c. 93A, §9.
At the outset, it should be noted that Travelers, as an insurer providing workers’ compensation insurance, is engaged in trade or commerce under G.L.c. 93A. Clearly, Vegnani or his estate may be deemed consumers under the Act. Also, beyond contest is that the required demand letter was seasonably sent. It seems equally clear that, if there were a G.L.c. 93A violation, Traveler’s actions caused the loss to the plaintiff of the payment of the agreed amount of $15,000,00 by repudiating its obligation to follow through with the settlement and effectively preventing approval consideration by the IAB.
The test of unfairness under c. 93A includes whether the conduct being considered is “... immoral, unethical, oppressive or unscrupulous ...” Purity Supreme, Inc. v. Attorney General, 380 Mass. 762, 777 (1980). This standard requires the fact finder to “. . . discover and make explicit those unexpressed standards of fair dealing which the conscience of the community may progressively develop.” Commonwealth v. DeCotis, 366 Mass. 234, 242 (1974). There is to be a balancing of equities, including whether Travelers took advantage of Vegnani’s administratrix and whether the administratrix was defenseless. Mechanic’s National Bank of Worcester v. Killeen, 377 Mass 100, 110 (1979).
The actions of Travelers more than meets the test of immoral unethical, oppressive and unscrupulous conduct. Travelers was aware of Vegnani’s perilous health situation and took that into account in agreeing to the lump-sum settlement. When Vegnani died a short time later Travelers realized that it had made a bad bargain and determined to extricate itself by suggesting that its confirmed-in-writing settlement agreement was nothing more than a “settlement offer” and then, when that ploy failed, argued that it was not bound until the agreement received IAB approval which approval it then blocked by its refusal to sign the settlement form and to cooperate in the presentation of the settlement to the IAB for is approval. It flexed its corporate muscle against the workers’ widow who was the administratrix of his estate, necessarily recognizing that the amount in issue was relatively small and, given the relative size of the parties, the chances of being brought to task for its conduct, relatively slight. This is exactly the kind of “. . . immoral, unethical, oppressive or unscrupulous . . .” *31 conduct condemned under c. 93A. It clearly went beyond a simple breach of contract. It was, inter alia, an effort to take advantage of the workers’ death and to prevent, by its acts, settlement approval consideration by the IAB. The court, therefore, determines that Travelers has violated G.L.c. 93A.
The next area of inquiry is whether the violation was willful or knowing. Here the defendant acted with the clear intent to extricate itself from its obligations by engaging in unfair acts by misdescription of its contractual obligations which it repudiated and by preventing approval consideration by the IAB. It intentionally used unfair acts to bring about an unfair result. It undertook this course knowingly to deprive the administratrix of the $15,000.00 settlement necessarily knowing that, having in mind the amount in issue and the disparity in the size of the parties, it stood an excellent chance of getting away with it. Its conduct was both willful and knowing under G.L.c. 93A. The court, therefore, awards treble damages.
Damages here, proximately caused by Travelers’ acts, is the agreed settlement amount of $15,000.00. This amount, trebled, is $45,000.00 which the court hereby awards.
The last issue is the award of attorneys fees. G.L.c. 93a §9(4). The amount requested with expenses, through January 17, 1996 is $18,656.49. This amount is supported by a detailed affidavit, admitted into evidence without objection. The hourly rate requested is reasonable and the work performed was appropriate. The court determines that amount requested is reasonable.
ORDER
The court orders that judgment enter for the plaintiff in the amount of $45,000 plus statutory interest to which is to be added the sum of $18,656.49 for attorneys fees and expenses.

Note: Exhibit A has not been reproduced.